UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| **SANDY DILLMAN**, *on behalf of herself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>**PALMER ADMINISTRATIVE SERVICES, INC.**,<br><br>*Defendant*. | Civil Case No.:  23-2456<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of the relentless marketing practices of Defendant, Palmer Administrative Services, Inc. ("Palmer" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2. Palmer makes, or has made on its behalf, aggressive telemarketing calls soliciting its auto warranty products and services.

3. These calls are made to individuals on the National Do-Not-Call Registry.

4. Palmer continues to make these calls even after the called party requests that Palmer cease calling.

5. The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

6. The TCPA also prohibits making telemarketing calls to a person who, like Ms. Dillman, has previously asked not to receive such calls and makes sellers like Palmer liable for calls in violation of the TCPA's internal do-not-call rules.

7. Accordingly, Ms. Dillman brings this action on behalf of herself and classes of

1

similarly situated individuals.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9. This Court has jurisdiction over Palmer because Palmer is headquartered in this District, conducts business transactions in this District and Palmer made calls from this District as part of the business it conducts in this District.

10. Venue is proper in this District because Palmer is headquartered in this District and because some of the wrongful conduct giving rise to this case occurred in and/or were directed from this District.

## PARTIES

11. Plaintiff Sandy Dillman ("Ms. Dillman") is, and at all times mentioned herein was, a citizen and resident of Lewiston, Idaho.

12. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Palmer is, and at all times mentioned herein was, a Delaware corporation headquartered at 3430 Sunset Avenue, Ocean Township, NJ 07712.

14. Palmer is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because

"telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

16. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

17. These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

18. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

19. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

20. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

22. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23. The FCC found that "the company-specific do-not-call list alternative is the most

effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

24. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

25. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

26. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

27. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

28. Accordingly, all telemarketing calls violate the TCPA, unless Palmer can demonstrate that it has implemented the required policies and procedures.

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

29. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

30. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

31. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

32. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the

seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

33. Ms. Dillman is the user of landline telephone number (XXX)-XXX-7594.

34. Ms. Dillman's landline telephone number (XXX)-XXX-7594 is used for residential purposes and is not associated with a business.

35. Ms. Dillman's landline telephone number (XXX)-XXX-7594 has been on the National Do-Not-Call Registry since February 25, 2006.

36. Ms. Dillman personally placed her landline telephone number (XXX)-XXX-7594 on the National Do-Not-Call Registry.

37. In or around November, 2022 Ms. Dillman began receiving telephone calls from Palmer or a third-party calling on Palmer's behalf soliciting her to purchase a vehicle warranty.

38. These calls came from changing ten-digit numbers.

39. For example, Ms. Dillman received calls from Palmer or a third-party calling on Palmer's behalf on at least the following dates and times from the following phone numbers:

- April 10, 2023 at 9:43am from 208-418-2202;
- April 10, 2023 at 10:16am from 208-418-2138;
- April 11, 2023 at 9:07am from 208-418-2262;
- April 11, 2023 at 10:31am from 208-418-2150;
- April 11, 2023 at 1:31pm from 208-418-2204;
- April 12, 2023 at 9:21am from 208-418-2221;
- April 12, 2023 at 11:00am from 208-418-2149;
- April 12, 2023 at 1:30pm from 208-418-2263;

- April 12, 2023 at 2:25pm from 208-418-2263;
- April 13, 2023 at 8:59am from 208-418-2198;
- April 13, 2023 at 9:50am from 208-418-2248;
- April 13, 2023 at 1:52pm from 208-418-2175;
- April 14, 2023 at 9:13am from 208-418-2242; and
- April 14, 2023 at 1:00pm from 208-418-2160.

40. Palmer's internal records will evidence the dates and times of all of the calls Plamer placed to Ms. Dillman.

41. Ms. Dillman advised the caller that she was not interested in a car warranty, however Palmer continued calling.

42. Ms. Dillman advised Palmer that she was not interested in a car warranty during the first call Palmer placed to Ms. Dillman.

43. On numerous calls, Ms. Dillman requested to be added to Palmer's do-not-call list, however Palmer continued calling.

44. On numerous calls, Ms. Dillman requested that Palmer stop calling her.

45. Ms. Dillman would call the telephone numbers back and select the prompts to be added to Palmer's do-not-call list, however Plamer continued calling.

46. All of the calls followed the same or similar scripts and asked Ms. Dillman about a warranty related to a Ford F-150 truck.

47. Ms. Dillman knew that these calls were from Palmer because on one of the calls, she asked the caller for the company's website and was provided www.palmeradministration.com

48. The website www.palmeradministration.com is Palmer's website.

49. Ms. Dillman did not provide prior express invitation or permission or consent for

these telephone calls.

50. To the contrary, in response to the unwanted calls, Ms. Dillman repeatedly requested that they stop.

51. Palmer, did not have written do-not-call policies or procedures at the time of the calls it made to Ms. Palmer and the classes defined below.

52. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued telephone calls to Ms. Dillman after she directly asked not to be contacted.

53. Palmer's violations were negligent.

54. Alternatively, Palmer's violations were willful and knowing.

55. Ms. Dillman and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Palmer's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. Palmer's telephone calls were annoying and a nuisance, and wasted the time of Ms. Dillman and the class members. *See, e.g., Mims,* 565 U.S. at 372.

## DEFENDANT'S LIABILITY

56. Palmer used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

57. Palmer made two or more telephone solicitations to Ms. Dillman, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

58. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Dillman is entitled to $500 per call through 47 U.S.C. § 227(c).

59. Ms. Dillman is entitled to $1,500 per call if Palmer's actions are found to be knowing or willful.

60. Palmer placed two or more telemarketing calls to Ms. Dillman, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

61. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Dillman is entitled to $500 per call through 47 U.S.C. § 227(c).

62. Ms. Dillman is entitled to $1,500 per call if Palmer's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of three proposed "Classes," as defined as follows:

### THE TCPA CLASSES

Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period, including at least one after the person requested that the calls or messages stop from four (4) years prior to the filing of the Complaint..

("Policy Class").

(The Registry Class and the Policy Class are together referred to herein as the "Classes.")

64. Excluded from the Classes are Palmer and any entities in which Palmer has a controlling interest; Palmer's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

65. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

66. The exact number and identities of the persons who fit within the Classes are ascertainable in that Palmer and third parties maintain written and electronically stored data showing:

    a. The time period(s) during which Palmer or its agent made the telephone calls;

    b. The telephone numbers to which Palmer or its agent made telephone calls;

    c. The telephone numbers for which Palmer had prior express written consent;

    d. The purposes of such telephone calls; and

    e. The names and addresses of Class members.

67. The Classes are comprised of hundreds, if not thousands, of individuals.

68. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

    a. Whether Palmer (or someone acting on its behalf) makes telemarketing calls;

    b. Whether Palmer (or someone acting on its behalf) obtains prior express written consent;

    c. Whether Palmer or the entities with which they contract make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

    d. Whether Palmer had the required policies and procedures prior to making telemarketing calls;

    e. Whether Palmer's statutory violations were willful and knowing; and

    f. Whether Palmer should be enjoined from engaging in such conduct in the future.

69. Plaintiff is a member of the Classes in that Palmer placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, after she asked Palmer to stop, and while her telephone number was on the National Do-Not-Call Registry. In addition, certain of these calls utilized an artificial or prerecorded voice.

70. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Palmer's uniform conduct and are based on the same legal theories as these claims.

71. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Palmer's unwanted calls and suffered a nuisance and an invasion of their privacy.

72. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

73. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

74. Palmer has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

75. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

76. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

77. Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Registry Class)

78. Ms. Dillman and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

79. Palmer made, or had made on its behalf, telephone solicitations to Ms. Dillman's and putative Registry Class Members' telephone numbers.

80. Ms. Dillman's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

81. Ms. Dillman and putative Registry Class Members each received two or more such calls in a 12-month period.

82. Ms. Dillman and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

83. Ms. Dillman and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

### SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the Policy Class)

84. Ms. Dillman and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

85. Palmer made numerous telephone calls for telemarketing purposes to Ms. Dillman's and putative Policy Class Members' telephone numbers.

86. Palmer did so despite not having a written policy pertaining to "do not call" requests.

87. Palmer did so despite not having such a policy available "upon demand."

88. Palmer did so despite not training their personnel on the existence or use of any internal "do not call" list or policy.

89. Palmer did so despite not recording or honoring "do not call" requests.

90. Palmer made two or more telemarketing calls to Ms. Dillman's and putative Policy Class Members' telephone numbers in a 12-month period.

91. Ms. Dillman and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

92. Ms. Dillman and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Ms. Dillman as the representative of the Classes and appointing their counsel as Class Counsel;

B. An order declaring that Palmer's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Palmer from engaging in the

wrongful and unlawful acts described herein;

        D.      An award of statutory damages;

        E.      An award of treble damages; and

        F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** May 4, 2023

                                       s/ *Max S. Morgan*
                                       Eric H. Weitz, Esquire
                                       Max S. Morgan, Esquire
                                       **THE WEITZ FIRM, LLC**
                                       1515 Market Street, #1100
                                       Philadelphia, PA 19102
                                       Tel: (267) 587-6240
                                       Fax: (215) 689-0875
                                       max.morgan@theweitzfirm.com
                                       eric.weitz@theweitzfirm.com